CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
Shannon Coit (Bar No. 298694)
(E-Mail: shannon_coit@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
Maksim Zaitsev

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>Maksim Zaitsev,<br><br>　　　　Defendant. | Case No. 24-cr-00154-SPG<br><br>**MAKSIM ZAITSEV'S BRIEF IN SUPPORT OF MOTION FOR BAIL REVIEW (CR 88)** |

　　　　Maksim Zaitsev, through his counsel of record, Deputy Federal Public Defender Shannon Coit, hereby submits this brief in support of his motion for bail review (CR 88). The government opposes bond based on danger to the community and risk of flight/non-appearance.

　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　CUAUHTEMOC ORTEGA
　　　　　　　　　　　　　　　　　　Federal Public Defender

DATED: March 28, 2025　　　　By   */s/ Shannon Coit*
　　　　　　　　　　　　　　　　　　Shannon Coit
　　　　　　　　　　　　　　　　　　Deputy Federal Public Defender
　　　　　　　　　　　　　　　　　　Attorney for Maksim Zaitsev

## **TABLE OF CONTENTS**

I. INTRODUCTION ............................................................................................. 1

II. FACTUAL BACKGROUND ........................................................................... 2

    A.    Mr. Zaitsev Is in the U.S. Seeking Political Asylum and Is Accused of Injuring an ICE Officer in an Isolated Incident. ............................................. 2

    B.    The Court Reviews the Previous Detention Order De Novo. ......................... 3

III. DISCUSSION ................................................................................................. 4

    A.    "Liberty Is the Norm, and Detention Prior to Trial Is the Carefully Limited Exception," and the Government Has the Burden to Show No Conditions for Release Exist. ........................................................................... 4

    B.    The Defense Proposes Comprehensive Bond Conditions. ............................. 5

    C.    The Bond Package Reasonably Assures That Mr. Zaitsev Is Not a Risk to the Community. ................................................................................................ 5

    D.    With a Pending Asylum Application, History of Appearing, and Growing Community, Mr. Zaitsev Is Not at Risk of Non-Appearance. ......................... 7

IV. CONCLUSION .............................................................................................. 10

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Gavino v. MacMahon*,
   499 F.2d 1191 (2d Cir. 1974) (per curiam) ..................................................................4

*United States v. Alqahtani*,
   2020 WL 4904068 (D.N.M. Aug. 20, 2020) ................................................................7

*United States v. Chen*,
   820 F. Supp. 1205 (N.D. Cal. 1992) (Walker, J.) .......................................................10

*United States v. Fernandez-Alfonso*,
   816 F.2d 477 (9th Cir. 1987) .......................................................................................4

*United States v. Figueroa-Alvarez*,
   2023 WL 4315592 (D. Idaho July 3, 2023) .................................................................8

*United States v. Giordano*,
   370 F. Supp. 2d 1256 (S.D. Fla. 2005) ......................................................................10

*United States v. Gray*,
   651 F. Supp. 432 (W.D. Ark. 1987) ...........................................................................10

*United States v. Hernandez-Saldivar*,
   2022 WL 4474893 (N.D. Ala. Sept. 26, 2022) ............................................................8

*United States v. Hir*,
   517 F.3d 1081 (9th Cir. 2008) .....................................................................................4

*United States v. Koenig*,
   912 F.2d 1190 (9th Cir. 1990) .....................................................................................3

*United States v. Motamedi*,
   767 F.2d 1403 (9th Cir. 1985) ............................................................................ 4, 6, 7

*United States v. O'Brien*,
   895 F.2d 810 (1st Cir 1990) .........................................................................................9

*United States v. Orta*,
   760 F.2d 887 (8th Cir. 1985) .......................................................................................5

*United States v. Salerno*,
   481 U.S. 739 (1987) ............................................................................................ 3, 4, 5

# TABLE OF AUTHORITIES

Page(s)

*United States v. Townsend*,
   897 F.2d 989 (9th Cir. 1990) ........................................................................ 5, 6, 7, 10

*United States v. Valdez*,
   2022 WL 3999957 (D.N.M. Sept. 1, 2022) ................................................................ 8

*United States v. White*,
   2021 WL 2155441 (M.D. Tenn. May 27, 2021) ........................................................ 6

**Statutes**

18 U.S.C. § 3142 ................................................................................................................ 4

18 U.S.C. § 3142(g) ..................................................................................................... 1, 4

18 U.S.C. § 3145(b) ......................................................................................................... 3

Bail Reform Act .......................................................................................................... 4, 6

Moreover, under the Bail Reform Act ............................................................................ 1

**Other Authorities**

Justice Statistics, *Pretrial Release and Misconduct in Federal District*
   *Courts, Fiscal Years 2011–2018*, tbl.9 (Mar. 2022) ................................................ 8, 9

Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*,
   123 Yale L. J. 1344, 1347–48 (2014) ........................................................................... 9

## I. INTRODUCTION

Maksim Zaitsev is a young man who escaped Russia to seek political asylum in the United States. Over the last two years, he has worked to rebuild a new life in Los Angeles with his long-term partner, who he refers to as his wife, without incurring as much as a speeding ticket. He found employment, moved to an apartment with his partner, and established a community in his new home. Mr. Zaitsev cannot go back to Russia, nor would he go to any other country. He is in the United States because this is where he wants to be, and this is where he will remain if released.

What is alleged to have happened in this case is the only factor that the Magistrate Judge listed to determine that Mr. Zaitsev is such a danger to the community that he must be detained. While no federal employee should ever be at risk while on the job, no federal employee, law enforcement agent, or any other person will be in danger if Mr. Zaitsev is released on bond. And the government certainly cannot prove—*by clear and convincing evidence*—that no set of bond conditions allow for Mr. Zaitsev's release based on danger. Mr. Zaitsev has no criminal history or prior allegations of violence. He does not have any weapons, nor were any weapons at issue in this case. At most, what is alleged in the Complaint an isolated incident that happened under extreme circumstances, and there are valid reasons to doubt what happened in this case occurred as alleged. Moreover, under the Bail Reform Act, the Court must give the least amount of weight of the evidence in this case when considering the factors for release. That applies when assessing risk of non-appearance as well. And other factors, including that Mr. Zaitsev's history of appearance, support that he is not at risk of non-appearance. Moreover, the Court can set bond conditions to mitigate any potential risk that Mr. Zaitsev might pose to the community or for non-appearance.

Given all of these facts and the factors the Court must consider under the Bail Reform Act, Mr. Zaitsev respectfully requests that this Court set reasonable terms and

1

conditions of release and order him released forthwith.

## II. FACTUAL BACKGROUND

### A.    Mr. Zaitsev Is in the U.S. Seeking Political Asylum and Is Accused of Injuring an ICE Officer in an Isolated Incident.

Maksim Zaitsev is a thirty-five year old man who moved to the United States from Russia to seek political asylum. He arrived in the U.S. in late 2022 with his long term partner, who he refers to as his wife. Mr. Zaitsev and his partner have spent the last two years rebuilding their lives in Southern California. Mr. Zaitsev works as a mechanic and for Uber and recently saved enough money to rent an apartment in Costa Mesa. He also began to build a community in his new home, including his friend who dropped everything to attend his last bond hearing and is offering to be a surety. Mr. Zaitsev has never been arrested or convicted of any crime.

According to the Complaint, last month, Mr. Zaitsev and his partner received a G-56 letter from the Department of Homeland Security requesting that they report to ICE offices to discuss the status of their immigration case. Mr. Zaitsev and his partner did exactly what they were told. And, on February 25, 2025, they reported to the ICE offices in downtown Los Angeles as directed.

Shortly after arriving, Mr. Zaitsev was called into the back area. According to the Complaint, Mr. Zaitsev was handcuffed. (Dkt. No. 1 ("Compl.") ¶ 9.) Notably, the Complaint does not state that Mr. Zaitsev resisted or fought while being handcuffed. (*See id.*) And, as proffered by the defense, Mr. Zaitsev was handcuffed with his hands behind his back. The Complaint then states that Mr. Zaitsev become "agitated" (not violent or belligerent, or that he resisted arrest) while being escorted down a hallway. (*Id.*) The Complaint goes on to describe Mr. Zaitsev's behavior more fully, allegedly only that he "screamed towards an individual that [that ICE officers believed was his wife] and [that he] dropped his weight." (*Id.*) He is not described as punching, pulling away, or screaming at the officers. (*See id.*) In fact, at this point, Mr. Zaitsev is not

2

1 alleged to be acting hostile or aggressive towards the ICE officers in any way. (*See id.*)
2 And this non-hostility continues. (*See id.*) What is alleged to have happened next is
3 that the ICE officers "lost their balance and fell to the ground." (*Id.*) Again, Mr.
4 Zaitsev is not alleged to have pulled down or even tripped the officers. (*See id.*) It is
5 only when the two ICE officers allegedly "attempted to regain control of" Mr. Zaitsev
6 (who was handcuffed with his hands behind his back) that he allegedly bit one of the
7 officers. (*Id.*) When Mr. Zaitsev appeared in duty court the next day, his forehead and
8 right eye were swollen and covered in bruises and red marks.

### B. The Court Reviews the Previous Detention Order De Novo.

At the first bond hearing on February 26, 2025, the pre-trial services officer was unable to contact anyone in the U.S. to verify Mr. Zaitsev's background or serve as a surety. Magistrate Judge Jacqueline Chooljian granted the government's request for detention. The defense sought reconsideration of this decision providing new facts, including surety resources, and a hearing was held on March 11, 2025. Judge Chooljian ordered detention again. (Dkt. No. 16.) In the written order, "instant offense allegations/resisting arrest" is listed to support that there is an unmitigated risk to the safety of community. (*Id.*) "[L]argely unverified background information, minimal time in CDCA, family ties outside U.S.; [and] instant allegations/resisting arrest" is listed as the factors listed to support a risk of non-appearance (*Id.*)

This Court has the authority to review the magistrate judge's detention order. 18 U.S.C. § 3145(b). A district court reviews such an order de novo. *See United States v. Koenig*, 912 F.2d 1190, 1191 (9th Cir. 1990).

3

## III. DISCUSSION

**A.  "Liberty Is the Norm, and Detention Prior to Trial Is the Carefully Limited Exception," and the Government Has the Burden to Show No Conditions for Release Exist.**

Almost fifty years ago, in *United States v. Salerno*, Chief Justice Rehnquist articulated the long standing ideal "[i]n our society[ is that] liberty is the norm, and detention prior to trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987).  Congress codified this ideal in the Bail Reform Act, "guarantee[ing ]in a noncapital case the defendant will have the pretrial right to release on bail except in extreme and unusual circumstances." *Gavino v. MacMahon*, 499 F.2d 1191, 1195 (2d Cir. 1974) (per curiam).  In other words, through the Bail Reform Act, Congress "mandate[d the] release of a person facing trial under the least restrictive condition or combination of conditions." *United States v. Motamedi*, 767 F.2d 1403, 1405 (9th Cir. 1985).   It also requires courts to "dispose of every alternative before ordering pretrial incarceration under the Bail Reform Act." *United States v. Fernandez-Alfonso*, 816 F.2d 477, 478 (9th Cir. 1987).

Following these directives, detention is authorized *only if* the government proves: (i) by clear and convincing evidence, that no set of conditions will reasonably assure the safety of any other person or the community; and (ii) by a preponderance, that no set of conditions will reasonably assure the defendant's appearance. 18 U.S.C. § 3142; *see also Salerno*, 481 U.S. at 741, 750-52; *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008); *Motamedi*, 767 F.2d at 1405.  The Court must consider four factors in determining whether the government has made the standard for pretrial detention: (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the person (including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug and alcohol abuse,

criminal history, or record concerning appearance at court proceedings); and (4) the nature and seriousness of the danger to any person or the community posed by the person's release. 18 U.S.C. § 3142(g); *Motamedi*, 767 F.2d at 1407.

### B. The Defense Proposes Comprehensive Bond Conditions.

Detention is appropriate only if, after considering every possible combination of conditions, the government proves that none can sufficiently mitigate (but not eliminate) the risk of nonappearance or danger. *United States v. Orta*, 760 F.2d 887, 890-91 (8th Cir. 1985) ("The judicial officer must . . . consider whether one of the codified conditions or any combination of the conditions will 'reasonably assure' the defendant's appearance and the safety of the community. The wide range of restrictions available ensures, as Congress intended, that very few defendants will be subject to pretrial detention.").

There is a set of bond conditions that will reasonably assure Mr. Zaitsev is not a danger to the community and that he will appear in this case. Those conditions include:

- $10,000.00 unsecured bond signed by Grant Galustyan, a U.S. citizen and Mr. Zaitsev's friend;
- Travel restrictions to the Central District of California;
- Surrender of all passports and travel documents and certify that he will not apply for any additional travel documents;
- Submit to Pretrial Services supervision; and
- Mental health assessment and psychological counseling;

The Court may also order any additional conditions that it deems appropriate, including location monitoring.

### C. The Bond Package Reasonably Assures That Mr. Zaitsev Is Not a Risk to the Community.

The defense's proposed bond package more than reasonably assures that Mr. Zaitsev will not be a danger to the community. With nothing more than the allegations

5

in this case, the government cannot meet its heavy burden to show, by clear and convincing evidence, otherwise. *See Salerno*, 481 U.S. at 741, 750-52.

As an initial matter, it is well-established that the weight of the evidence against a defendant is the "least important" factor when reviewing the government's pretrial detention request. *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990) ("The weight of the evidence against the defendant is a factor to be considered but it is 'the least important' of the various factors." (quoting *Motamedi*, 767 F.2d at 1408)). This rationale safeguards the presumption of innocence, the very bedrock of our criminal justice system. *See id.* It also guards against the possibility of making a "preliminary determination of guilt" that then leads to punishment in the form of a refusal to grant release. *Motamedi*, 767 F.2d at 1408.

The only factor supporting the Magistrate Judge's finding that Mr. Zaitsev is such a danger to the community that he cannot be released is the allegations contained in the Complaint. (Dkt. 17 at 3.) These allegations do not amount to clear and convincing evidence that there are *no* conditions to reasonably ensure—not guarantee—that Mr. Zaitsev is not a danger to the community. *See United States v. White*, 2021 WL 2155441, at *10 (M.D. Tenn. May 27, 2021) ("[F]ederal crimes are generally serious with serious penalties, and yet under the Bail Reform Act release is generally favored in federal criminal cases—as it should be, since locking up persons prior to conviction should be something of a last resort."). This is especially true in light of the additional facts supporting that Mr. Zaitsev is of no risk to the community. These facts include that, over the two years in the U.S., Mr. Zaitsev has had no criminal convictions or arrests, or any other allegations of violence. He does not have any DUIs, restraining orders, or even speeding tickets. He is not alleged to have used a weapon, nor does he own any weapons. There is simply nothing in the record to support a finding, by clear and convincing evidence, that no conditions exist to ensure that Mr. Zaitsev is not a danger to the community.

And as to the allegations in this case, there are many reasons to doubt what is alleged in the Complaint. First, Mr. Zaitsev was handcuffed with his hands behind his back. Second, at least two ICE officers were with Mr. Zaitsev. Third, if additional facts (or allegations) existed in favor for the government, such as Mr. Zaitsev being aggressive upon being handcuffed or at any other point during the initial arrest, those allegations would have been included in the Complaint. Instead, the sworn affidavit that supports the Complaint includes carefully worded allegations that do not paint a picture of a person who cannot be release from custody prior to trial. (*See* Compl. ¶ 9 (describing Mr. Zaitsev only as "agitated" and "dropp[ing] weight" and that he and the officers "lost their balance" and omitting other allegations such as Mr. Zaitsev hitting, kicking, or engaging in any other non-passive resistance).) The allegations in the Complaint do not amount to "clear and convincing evidence" to support the government's request for detention, especially in light of the other factors that carry more weight.

In sum, Mr. Zaitsev's lack of criminal history and stable home life is much more indictive as to whether he would engage in any violence in the future. There are conditions that can be placed on Mr. Zaitsev to reasonably assure he will not be a danger to the community, and the government has not met its heavy burden to prove, by clear and convincing evidence, otherwise.

**D.    With a Pending Asylum Application, History of Appearing, and Growing Community, Mr. Zaitsev Is Not at Risk of Non-Appearance.**

There is no risk of non-appearance here, and the government cannot meet its burden that there is no combination of conditions to reasonably assure Mr. Zaitsev's appearance in this case. *See Motamedi*, 767 F.2d at 1406.

At the previous hearing, the government pointed to Mr. Zaitsev's non-citizenship as a factor for non-appearance, but this alone is not sufficient. While the mere fact that

Mr. Zaitsev is not a citizen "may be taken into account, [] alienage does not by itself tip the balance either for or against detention." *Townsend*, 897 F.2d at 994.  Instead, detention is usually reserved for those who have a history of failing to appear.  *See, e.g., United States v. Alqahtani*, 2020 WL 4904068 at *2-3 (D.N.M. Aug. 20, 2020) (detaining a defendant due to "history of failing to appear for court proceedings"); *see also United States v. Hernandez-Saldivar*, 2022 WL 4474893 (N.D. Ala. Sept. 26, 2022) (history of non-appearance at court proceedings); *United States v. Valdez*, 2022 WL 3999957 at *12 (D.N.M. Sept. 1, 2022) (history of non-appearance at court proceedings).  Mr. Zaitsev has no such history of nonappearance.  In fact, Mr. Zaitsev has already proven that when he is instructed to appear, he will do so.  Mr. Zaitsev was at the ICE offices that day because he was complying with an agency letter requesting he appear at a specific date and time.

Further, the data and reasoning that debunks the assumption that undocumented defendants[1] are more likely to not appear, as compared to U.S. citizens.  As a District Court within the Ninth Circuit explained:

> Alien defendants who illegally enter this country, or illegally reenter this country after removal, do so for many reasons: to flee political persecution in their home country[and for other stated reasons].  But they share a common trait: they voluntarily chose to come to this country and stay here.  Presuming that they are any more likely than nonalien defendants to leave this country or the jurisdiction to avoid prosecution—just because they came here from another country—is misplaced.  Critically, this presumption is not supported by empirical proof. . . . [A]lien defendants granted pretrial release were less likely to fail to appear or violate conditions of release than non-aliens defendants.

*United States v. Figueroa-Alvarez*, 2023 WL 4315592, at *6 (D. Idaho July 3, 2023).  Data from the Department of Justice backs this up.  *See* U.S. Dept. of Justice Bureau of Justice Statistics, *Pretrial Release and Misconduct in Federal District*

---

[11] Because Mr. Zaitsev has a pending asylum application and entered the U.S. legally, he is typically not considered an "undocumented" person; however, his status is analogous to undocumented persons in this context.

8

1  *Courts, Fiscal Years 2011–2018*, at 11 tbl.9 (Mar. 2022). Undocumented individuals have an even lower rate of nonappearance than U.S. citizens: U.S. citizens fail to appear 0.9% of the time whereas undocumented individuals fail to appear 0.5% of the time. *See id.* So, compared to US citizens, undocumented defendants are also more likely to comply with other conditions of release, less like to be rearrested for a new offense, and less likely to have their bond revoked. *Id.*

Other factors support that Mr. Zaitsev will appear in this case. He has a pending asylum application in the United States with a hearing set in July 2025 and has lived in the country for over two years rebuilding his life, including working and getting an apartment. He also has surety resources. His friend, Grant Galustyan[2], is willing to post a $10,000.00 unsecured bond. If this amount is not enough for the Court, the Court can increase it as necessary. Courts often set an amount for bond without an identified surety, then it is up to the defense to locate a sufficient surety prior to release. Though it is not needed, this bond creates a significant incentive for Mr. Zaitsev to comply with all his bond conditions. Lastly, the Court can add location monitoring if necessary.[3]

---

[2] Pre-trial services also spoke with Mr. Zaitsev's friend, Grant Galustyan, and though pre-trial services listed information that Mr. Galustyan could not verify (such as birth date, which can the government can verify), Mr. Galustyan could verify several facts about Mr. Zaitsev. Mr. Galustyan verified that Mr. Zaitsev's family is in Russia, he has no children, he arrived in the U.S. two years ago, where he lives, and employment information. Mr. Galustyan also attended the last bond hearing in person.

[3] If the Court needs additional assurance as to flight, the evidence suggests that electronic monitoring is effective at reducing risk of flight. *See, e.g.,* Samuel R. Wiseman, *Pretrial Detention and the Right to the Monitored*, 123 Yale L. J. 1344, 1347–48 (2014) ("Increasingly sophisticated remote monitoring devices have the potential to sharply reduce the need for flight-based pretrial detention . . . . [T]he question of finding other ways of ensuring a nondangerous defendant's presence at trial is one not of ability, but of will. . . ."); *id.* at 1368–74 (citing studies in both European and American contexts to demonstrate that electronic monitoring is at least as effective as secured bonds at deterring flight, and that it comes at far reduced cost to both the defendant and the government); *United States v. O'Brien*, 895 F.2d 810, 814–16 (1st Cir 1990) (describing reduction in flight rate from monitoring program and concluding that "evidence concerning the effectiveness of the bracelet alone [] arguably rebuts the presumption of flight"). Indeed, it is so effective at constricting liberty that it should

Finally, as a practical matter, Mr. Zaitsev is a young man with the majority of his life ahead of him who is seeking a new home in the United States. He is in the U.S. because he wants to live here. So much so that he is seeking asylum. He cannot return to Russia, nor does he want to live in any other country. If Mr. Zaitsev absconded, he would be forced to give up his chance at asylum and hide out in another country that does not have an extradition treaty with the United State. Such a life is not worth it for him, especially given the guidelines at issue here. *See also United States v. Giordano*, 370 F. Supp. 2d 1256, 1264 (S.D. Fla. 2005) ("[I]t is generally accepted that more than evidence of the commission of a serious crime and the fact of a potentially long sentence is required to support a finding of serious risk of flight."). Again, the allegations of this case do not support a risk of non-appearance, and even if they did, it is the "least important" factor when considering pretrial detention request. *See Townsend*, 897 F.2d at 994; *see also United States v. Gray*, 651 F. Supp. 432, 436 (W.D. Ark. 1987) ("[T]he court does not believe that . . . any court should presume that every person charged is likely to flee simply because the evidence against him appears to be weighty. . . . Such a presumption would appear to be tantamount to a presumption of guilty, a presumption that our system simply does not allow.").

In short, there are no factors indicating that Mr. Zaitsev poses a risk of flight. This is certainly a situation where a combination of conditions can reasonably assure his appearance.

## IV. CONCLUSION

This is not a close case, but even if it was, close cases should result in release. *See United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (Walker, J.) (citing *Motamedi*, 767 F.2d at 1405–06) ("To give effect to the principle that doubts regarding the propriety of release be resolved in favor of the defendant, the court is to

---

only be imposed if it is a part of the least restrictive conditions necessary to "reasonably assure" appearance and community safety.

10

rule against detention in close cases."). The government cannot meet its heavy burden that, by clear and convincing evidence, no set of conditions will reasonably assure the safety of any other person or the community or, by the preponderance of the evidence, that no set of conditions will reasonably assure Mr. Zaitsev's appearance. Mr. Zaitsev had been in the U.S. for years without incident until he voluntarily showed up the ICE offices. What happened next has yet to be established, and the allegations in the Complaint cannot support an order of detention.

Accordingly, this Court should reverse the Magistrate Judge's order of detention and order Mr. Zaitsev's release with conditions.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: March 28, 2025        By  */s/ Shannon M. Coit*
                                  Shannon M. Coit
                                  Deputy Federal Public Defender
                                  Attorney for Maksim Zaitsev