BILAL A. ESSAYLI
United States Attorney
LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division
RAHUL R.A. HARI (Cal. Bar No. 313528)
NEIL P. THAKOR (Cal. Bar No. 308743)
Assistant United States Attorneys
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6159/6595
     E-mail:   Rahul.Hari@usdoj.gov
               Neil.Thakor@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>MAKSIM ZAITSEV,<br><br>      Defendant. | No. 2:25-cr-00154-SPG<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S EX PARTE APPLICATION FOR ORDER OF RELEASE AND/OR DISMISSAL OF THE CASE WITH PREJUDICE; DECLARATION OF BRIAN C. PETERSON<br><br>Location:    Courtroom of the Hon. Sherilyn Peace Garnett |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Rahul Hari and Neil Thakor, hereby files its Opposition to Defendant's Ex Parte Application for Order of Release and/or Dismissal.

//

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 11, 2025                    Respectfully submitted,

                                         BILAL A. ESSAYLI
                                         United States Attorney

                                         LINDSEY GREER DOTSON
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                         _____/s/_____
                                         RAHUL R.A. HARI
                                         NEIL P. THAKOR
                                         Assistant United States Attorneys

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                          PAGE

TABLE OF AUTHORITIES.................................................1

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.   INTRODUCTION...................................................1

II.  STATEMENT OF FACTS.............................................2

     A.   Defendant's Immigration History..........................2

     B.   Defendant's Criminal Charge..............................3

     C.   Defendant's Detention Under the INA and Attorney
          Visitation Policy........................................4

III. LEGAL STANDARD.................................................5

     A.   The Bail Reform Act and the Immigration and
          Nationality Act..........................................5

     B.   Applicable Detention Authority Under the INA.............6

IV.  ARGUMENT.......................................................7

     A.   The Immigration and Nationality Act is Independent of
          the Bail Reform Act......................................7

     B.   Defendant Has Reasonable Access to Counsel...............9

     C.   Dismissal Is Inappropriate Without a Showing of Injury
          and Prejudice...........................................10

V.   CONCLUSION....................................................12

1

**TABLE OF AUTHORITIES**

2    <u>DESCRIPTION</u>                                                              <u>PAGE</u>

3    **CASES**

4    <u>Ekene v. Cash</u>, 2012 WL 4711723 (C.D. Cal. May 14, 2012)..............9

5    <u>Pino v. Dalsheim</u>, 558 F. Supp. 673 (S.D.N.Y. March 8, 1983)........9

6    <u>United States v. Baltazar-Sebastian</u>, 990 F.3d 939 (5th Cir.
          2021)....................................................7
7
     <u>United States v. Diaz-Hernandez</u>, 943 F.3d 1196 (9th Cir. 2019)...1, 7
8
     <u>United States v. Lett</u>, 944 F.3d 467 (2d Cir. 2019)..............7, 8
9
     <u>United States v. Lewis</u>, 873 F.2d 1279 (9th Cir. 1989)...........2, 9
10
     <u>United States v. Morrison</u>, 449 U.S. 361 (1981).....................10
11
     <u>United States v. Pacheco-Poo</u>, 952 F.3d 950 (8th Cir. 2020)..........8
12
     <u>United States v. Salerno</u>, 481 U.S. 739 (1987)......................5
13
     <u>United States v. Santos-Flores</u>, 794 F.3d 1088 (9th Cir. 2015)......11
14
     <u>United States v. Soriano Nunez</u>, 928 F.3d 240 (3d Cir. 2019)......1, 7
15
     <u>United States v. Trujillo-Alvarez</u>, 900 F. Supp. 2d 1167 (D. Or.
          2012)....................................................7
16
     <u>United States v. Vasquez-Benitez</u>, 919 F.3d 546 (D.C. Cir. 2019).....8
17
     <u>United States v. Veloz-Alonso</u>, 910 F.3d 266 (6th Cir. 2018)........8
18
     <u>United States v. Yostin Sleiker, et al.</u>, 5:25-mj-00140-KK, (C.D.
19        Cal. Apr. 8, 2025).........................................11

20   <u>United States v. Zarate</u>, 2019 WL 6493927 (D. Nev. Dec. 2, 2019)....10

21   **STATUTES**

22   18 U.S.C. § 3142, <u>et seq.</u>,.......................................5

23   8 U.S.C. § 1101, <u>et seq.</u>...................................1, 2, 5, 6

24

25

26

27

28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.    INTRODUCTION

3      Defendant Maksim Zaitsev is detained by the United States

4  Immigration and Customs Enforcement ("ICE") in immigration custody

5  pursuant to the express terms of the Immigration and Nationality Act

6  ("INA"), 8 U.S.C. § 1101, et seq.[1]  Defendant asks the Court to

7  ignore the INA because the Court previously found that defendant

8  should be released on bond pursuant to the Bail Reform Act, a wholly

9  separate statute, and either order defendant's release from

10  immigration custody or dismiss the indictment.

11      Defendant's motion fails as a matter of law because, as

12  explained by the Ninth Circuit, "detention of a criminal defendant

13  pending trial pursuant to the Bail Reform Act and detention of a

14  removable alien pursuant to the Immigration and Nationality Act are

15  separate functions that serve separate purposes and are performed by

16  different authorities."  United States v. Diaz-Hernandez, 943 F.3d

17  1196, 1199 (9th Cir. 2019) (cleaned up).  Accordingly, although

18  defendant relies on a non-binding district court decision that

19  predates Diaz-Hernandez, "[n]o court of appeals . . . has concluded

20  that pretrial release precludes pre-removal detention."  United

21  States v. Soriano Nunez, 928 F.3d 240, 245 (3d Cir. 2019) (collecting

22  cases).  This Court should find the same and deny defendant's

23  extraordinary and legally baseless request for immediate release from

24  immigration detention.

25

26

27

28
---
[1] Defendant is subject to mandatory detention under 8 U.S.C. § 1225(b) as an "arriving alien," as defined under 8 U.S.C. § 1001.1(q), and discretionary detention under 8 U.S.C. § 1226(a)(1).

1    Defendant's motion is also factually baseless.  The routine
2    inconveniences of scheduling legal visits with defendant (whether in
3    immigration custody or pretrial criminal detention) is insufficient
4    to establish a claim of inadequate access to counsel.  See United
5    States v. Lewis, 873 F.2d 1279, 1280 (9th Cir. 1989).  More to the
6    point, the DFPD's declaration in support of defendant's motion listed
7    a myriad of ways that the defense can communicate with defendant to
8    prepare for trial in this case, including in-person visits,
9    telephonic calls, and video appointments, but the declaration failed
10   to allege that the defense in fact tried to communicate with
11   defendant using one or more of the many alternative communication
12   methods and was in fact unable to do so.  That is because, as
13   explained further below, it is easier to conduct in-person legal
14   visits and schedule calls at Desert View Annex, where defendant is
15   currently detained, than what is alleged by the defense.
16       The Court should deny the motion in full.

17   **II.  STATEMENT OF FACTS**

18       **A.  Defendant's Immigration History**

19       On or about December 16, 2022, defendant and his wife applied
20   for entry into the United States from Mexico as asylees at the San
21   Ysidro Port of Entry.  See Government's Motion in Limine No. 3 at 2-
22   3, Dkt. 38.  Defendant and his wife identified themselves as citizens
23   of Russia and presented their Russian passports to immigration
24   authorities.  Id. at 3.  Defendant did not possess a valid unexpired
25   immigrant visa, reentry permit, border crossing card, or other valid
26   documents allowing him to enter or remain in the United States,
27   thereby making him removable from the United States under the INA.
28   8 U.S.C.§ 1182(a)(7)(A)(i)(I).  Id.  Accordingly, defendant was

issued a Form I-862, Notice to Appear and "paroled into the United States pending 240 proceedings." Id. Defendant's notice to appear identifies defendant as "an arriving alien," and states that defendant is "subject to removal from the United States." Id.

On or about February 6, 2025, Supervisory Detention and Deportation Officer Carlos Fuentes, an authorized immigration officer, signed an I-200 administrative arrest warrant for defendant. Id. Mr. Fuentes identified that the probable cause for defendant's arrest was "the pendency of ongoing removal proceedings against the subject." Id.

### B.   Defendant's Criminal Charge

On February 25, 2025, defendant reported to the Federal Building in downtown Los Angeles for an appointment at the U.S. Citizenship and Immigration Services office. The appointment was a law enforcement ruse to safely arrest defendant in a controlled environment pursuant to the administrative arrest warrant. Defendant was handcuffed and walked away from the private room where he was arrested towards a non-public elevator.

When defendant entered a hallway, defendant began resisting the arresting officers, including kicking off the wall, dropping his body weight to the ground, and turning back towards the lobby. When officers turned defendant forward, including by directing his face forward, defendant bit down on the finger of one of his arresting officers, lacerating flesh and fracturing his arresting officer's finger. Defendant has been charged with a single count of assault on a federal officer resulting in bodily injury in violation of 18 U.S.C. § 111(a)(1), (b).

On February 26, 2025, defendant appeared for an initial appearance on a criminal complaint before the duty magistrate judge and was ordered detained. Minutes of Initial Appearance, Dkt. 4. On March 11, 2025, the magistrate court denied defendant's application for reconsideration of pre-trial detention. Minutes of Detention Hearing, Dkt. 15. On April 2, 2025, this Court heard argument on defendant's application for review and reconsideration of defendant's pre-trial detention and ordered defendant released under the Bail Reform Act. Amended Criminal Minutes, Dkt. 32.

## C. Defendant's Detention Under the INA and Attorney Visitation Policy

On April 4, 2025, defendant was taken into custody on his immigration detainer under the INA and transported to Desert View Annex in Adelanto, California, where he is currently detained. Desert View Annex is approximately 85 miles from the Los Angeles office of the Federal Public Defender in San Bernadino County, within the Central District of California.

Criminal defense attorneys are permitted to see their clients at Desert View Annex by appointment or walk-in. See Declaration of Brian Peterson ("Peterson Decl.") at ¶¶ 5-6. Appointments are available seven days a week (weekends and holidays included) and can be made up to one week in advance. Id. at ¶ 4, Ex. 1. Walk-ins are allowed with a valid bar card or a copy or photograph of a bar card. Id. at ¶ 6. Contrary to the defense's claims, in-person attorney visits are not subject to the one-hour time limit. Id. Attorneys can also contact their clients through video appointments. Id. at ¶ 7. Video appointments are subject to the one-hour time limit to give all detainees equal access to virtual appointments with their

4

attorneys.  Id.  Paralegals, legal support staff, and translators can accompany attorneys on visits with clients, though they must receive ICE clearance in a process that takes approximately fifteen minutes. Id. at 8.

## III. LEGAL STANDARD

### A.    The Bail Reform Act and the Immigration and Nationality Act

Congress enacted the Bail Reform Act, 18 U.S.C. § 3142, et seq., to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released...." United States v. Salerno, 481 U.S. 739, 741 (1987).  After a hearing, if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial."  18 U.S.C. § 3142(e)(1).

A separate statute, the INA, 8 U.S.C. § 1101, et seq., charges the United States Secretary of Homeland Security with the administration and enforcement of the INA and other immigration laws. Under the INA, ICE is authorized to detain, or in some cases required to detain, individuals who are subject to removal.  See 8 U.S.C. § 1225(b) (requiring mandatory detention of individuals deemed to be "arriving aliens."); 1226(a)(1) (authorizing discretionary detention pending removal.).  Specifically, 8 U.S.C. § 1225(b)(1)(B)(iii)(IV), "Mandatory Detention," states that any arriving alien "shall be detained pending a final determination of credible fear of persecution ... until removed."

Section 1226(a) of the INA also provides the Attorney General discretion to arrest and detain an individual "pending a decision on

5

whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). If the Attorney General grants parole, she may revoke bond or parole "at any time," and may "rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b) (emphasis added). In short, the INA permits immigration authorities to rearrest individuals subject to removal for any reason, at any time, pending a removal decision.

### B. Applicable Detention Authority Under the INA

Both 8 U.S.C. §§ 1225(b) and 1226(a)(1) apply here. First, as an alien who presented himself for admission at the border, defendant is classified as an "arriving alien" under 8 U.S.C. § 1001.1(q), that is, "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 U.S.C. § 1226(b) applies to "arriving aliens" like defendant and sets forth procedures for the inspection or detention of aliens who are applicants for admission to the United States. See generally, 8 U.S.C. § 1225. 8 U.S.C. § 1226(b)(1)(B)(IV) requires mandatory detention until removed.[2]

Alternatively, 8 U.S.C. § 1226(a)(1) provides the discretionary authority to detain noncitizens pending removal, "on a warrant issued by the Attorney General." See 8 U.S.C. § 1226(a)(1).

---

[2] Defendant will be entitled to a Rodriguez bond hearing after he is in ICE custody for six months. See Rodriguez v. Holder, No. CV 07-3239 TJH (RNBx), 2013 WL 5229795 (C.D. Cal. Aug. 6, 2013), aff'd in part, rev'd in part sub nom. Rodriguez v. Robbins, 804 F.3d 1060 (9th Cir. 2015), rev'd sub nom. Jennings v. Rodriguez, 583 U.S. 281 (2018).

IV.   **ARGUMENT**

    A.   **The Immigration and Nationality Act is Independent of the Bail Reform Act**

       ICE's authority to detain defendant pursuant to the INA is separate and apart from the Court's authority to detain or release defendant under the Bail Reform Act.  See Diaz-Hernandez, 943 F.3d at 1199 (9th Cir. 2019).  Defendant's argument to the contrary, premised on a district case from Oregon, fails.  United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167 (D. Or. 2012).  Trujillo-Alvarez is not binding precedent on this Court, ignores the independent detention authority prescribed by the INA, and was issued before the Ninth Circuit's decision in Diaz-Hernandez.

       Consistent with the Ninth Circuit's explanation in Diaz-Hernandez that detention under the Bail Reform Act and detention under the INA are "separate functions that serve separate purposes and are performed by different authorities," six other circuits have rejected defendant's claim that the government cannot pursue a criminal prosecution while an alien is detained by immigration authorities.  See Soriano Nunez, 928 F.3d at 245 (3d Cir. 2019) (holding that pre-trial release under the Bail Reform Act does not preclude pre-removal detention under the INA and that "No court of appeals that has examined this assertion has concluded that pretrial release precludes pre-removal detention"); United States v. Lett, 944 F.3d 467, 471 (2d Cir. 2019) ("the Bail Reform Act and the INA authorize the government to pursue both criminal prosecution and removal simultaneously, and there is no conflict between the detention-and-release provisions of the two statutes."); United States v. Baltazar-Sebastian, 990 F.3d 939, 944-45 (5th Cir. 2021)

1   (same); <u>United States v. Veloz-Alonso</u>, 910 F.3d 266, 270 (6th Cir.

2   2018) ("ICE may fulfill its statutory duties under the INA to detain

3   an illegal alien pending trial or sentencing regardless of a Bail

4   Reform Act release determination."); <u>United States v. Pacheco-Poo</u>,

5   952 F.3d 950, 953 (8th Cir. 2020) (same); <u>United States v. Vasquez-</u>

6   <u>Benitez</u>, 919 F.3d 546, 552 (D.C. Cir. 2019) (same).

7       Taking <u>Lett</u>, for example: the defendant was a citizen of

8   Trinidad and Tobago and was arrested at John F. Kennedy International

9   Airport after CBP found 2.12 kilograms of cocaine in his suitcase.

10  944 F.3d at 469.  "CBP paroled Lett into the United States for

11  criminal prosecution and transferred him to the custody of the Bureau

12  of Prisons ("BOP"), and the government filed a criminal complaint

13  charging Lett with importing cocaine...."  <u>Id.</u>  Meanwhile, ICE lodged

14  an immigration detainer against him.  <u>Id.</u>  Ultimately, the district

15  court ordered Lett's release pending his criminal case.  <u>Id.</u>  Then

16  ICE acted on the lodged detainer and took the defendant into ICE

17  custody following his release from BOP, and initiated removal

18  proceedings.  <u>Id.</u>  "Lett filed a motion to dismiss the indictment in

19  his criminal case, arguing that his continued detention by ICE

20  violated the Bail Reform Act."  <u>Id.</u>  The district court dismissed the

21  Indictment holding that the government needed to decide whether to

22  criminally prosecute or remove Lett but could not proceed

23  simultaneously.  <u>Id.</u> at 469-470.  The Second Circuit vacated this

24  decision finding that the Bail Reform Act and the INA "serve

25  different purposes, govern separate adjudicatory proceedings, and

26  provide independent statutory bases for detention," and therefore

27  "the government's authority to detain an alien pursuant to the INA"

28

8

1  does not disappear merely because he cannot be detained under the

2  Bail Reform Act pending his criminal trial.  Id. at 470.

3      Here, ICE acted on their immigration detainer, which was lodged

4  prior to defendant's grant of bond, and took defendant into ICE

5  custody pursuant to its detention authority under the INA.  Contrary

6  to defendant's position, the government is not required to choose

7  what proceedings to pursue and may pursue both removal and criminal

8  proceedings simultaneously as authorized by statute.  For this

9  reason, the Court should deny defendant's emergency request for

10 defendant's release from immigration custody.

11 **B.   Defendant Has Reasonable Access to Counsel**

12     The Court should also deny defendant's request for dismissal of

13 the Indictment on grounds of inadequate access to counsel.  Desert

14 View Annex's attorney visitation policy is not overly restrictive as

15 to constructively deny defendant's access to counsel.  While defense

16 counsel may be inconvenienced by the distance they must travel to see

17 defendant or the pre-planning required to schedule appointments and

18 make time to visit their client, defendant and his counsel are

19 entitled only to "reasonable" access not "the most convenient"

20 access.  In fact, courts have rejected defendant's argument that the

21 length of travel constitutes deprivation of counsel, including the

22 Ninth Circuit.  See United States v. Lewis, 873 F.2d 1279, 1280 (9th

23 Cir. 1989) (finding that defendant was not denied access to counsel

24 because the 120-mile distance between him and his counsel did not

25 actually or constructively deny him the assistance of counsel

26 altogether); Ekene v. Cash, 2012 WL 4711723, at *12 (C.D. Cal. May

27 14, 2012)(citing Lewis, 873 F.2d 1279); Pino v. Dalsheim, 558 F.

28 Supp. 673, 675 (S.D.N.Y. March 8, 1983)(noting that several courts

1  have noted that "travel inconvenience of an attorney ... does not

2  reach the level of a constitutional violation.").

3      Here, defendant is not precluded from seeing defense counsel and

4  may do so either in person or virtually, 24 hours a day, seven days a

5  week.  In-person visits can be by appointment or by walk-in.

6  Appointments can be made up to a week in advance.[3]  Additionally, in-

7  person visits are not subject to any time limit.  Instead, this

8  limitation applies only to video conference and is to ensure

9  equitable access to all detainees.  Further, the clearance for

10  translators and paralegals is not overly burdensome as it takes

11  approximately fifteen minutes to gain clearance.  Accordingly,

12  defendant has reasonable access to counsel.  He has not shown

13  otherwise, nor has his counsel alleged that they have made attempts

14  to access their client that have been denied or frustrated.

15      **C.  Dismissal Is Inappropriate Without a Showing of Injury and
        Prejudice**

16

17      In <u>United States v. Morrison</u>, the Court ruled that the remedy

18  for a violation of a defendant's Sixth Amendment right to counsel

19  "should be tailored to the injury suffered from the constitutional

20  violation and should not unnecessarily infringe on competing

21  interests." 449 U.S. 361,364 (1981); <u>see also</u> <u>United States v.</u>

22  <u>Zarate</u>, 2019 WL 6493927 (D. Nev. Dec. 2, 2019).  While the Court in

23  <u>Morrison</u> did leave the door open for potential dismissal on a record

24  that reflects continuing prejudice, <u>see</u> <u>Morrison</u>, 449 U.S. at 367,

25

26

27  _____

28  [3] Defense counsel alleges that appointments must be made "<u>at
    least</u>" one week in advance.  Defendant's <u>Ex Parte</u> Application, Dkt.
    40 at 3, 9 (emphasis added).  This misreads Dessert View Annex's
    visitation policy which states that appointments can be made "<u>up to</u>"
    one week in advance.  Peterson Decl. ¶4, Ex. 1, ¶5 (emphasis added).

1  fn. 2, defendant here has not shown continuing prejudice, let alone

2  actual injury.

3      The procedural history in Zarate is virtually identical to the

4  facts in this case.  There, ICE detained defendant pending removal

5  proceedings following release under the Bail Reform Act.  See Zarate,

6  2019 WL 6493927 at *1.  In Zarate, unlike here however, defendant was

7  actually prevented from seeing her defense counsel for a short period

8  while in ICE custody.  Defendant in Zarate raised virtually the same

9  arguments that defendant is making in this case, but the court

10 relying on Morrison, held that defendant "does not even approach

11 demonstrable prejudice from the short period that her counsel were

12 unable to meet with her."  Id. at *4.  The Zarate court held that

13 even if defendant's ICE custody rose to the level of deprivation of

14 counsel -- the court found that it did not -- the remedy would not be

15 dismissal of the indictment.  Id.

16     To the extent defendant is concerned that his detention pending

17 removal proceedings will infringe on his constitutional rights, the

18 government has already coordinated with ERO to ensure defendant's

19 transportation from ICE custody to future criminal proceedings in

20 this matter.  Cf. United States v. Santos-Flores, 794 F.3d 1088, 1090

21 (9th Cir. 2015) (holding that a district court may "craft an

22 appropriate remedy" if immigration detention "jeopardizes the

23 district court's ability to try him").  As a result, a request to

24 dismiss the criminal case at this time is premature.  See, e.g.,

25 United States v. Yostin Sleiker, et al., 5:25-mj-00140-KK, Criminal

26 Minutes, Dkt. 26 (C.D. Cal. Apr. 8, 2025) (deferring ruling on an

27 emergency motion for release from immigration custody after being

28 released on bond under the Bail Reform Act).

**V.    CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's emergency request for release from ICE custody or dismissal of the Indictment.