BILAL A. ESSAYLI
United States Attorney
CHRISTINA T. SHAY
Assistant United States Attorney
Chief, Criminal Division
RAHUL R.A. HARI (Cal. Bar No. 313528)
NEIL P. THAKOR (Cal. Bar No. 308743)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-6159/6595
    E-mail:   Rahul.Hari@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>         v.<br><br>MAKSIM ZAITSEV,<br><br>      Defendant. | No. CR 25-154-SPG<br><br>GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS INDICTMENT; DECLARATION OF RAHUL R.A. HARI<br><br>Hearing Date: May 20, 2025<br>Hearing Time: 9:30 a.m.<br>Location:    Courtroom of the Hon. Sherilyn P. Garnett |

     Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Rahul Hari and Neil Thakor, hereby files its Opposition to Defendant's Motion to Dismiss Indictment.

//

//

This Opposition is based upon the attached memorandum of points and authorities, the declaration of Rahul R.A. Hari, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 18, 2025                    Respectfully submitted,

                                       BILAL A. ESSAYLI
                                       United States Attorney

                                       CHRISTINA T. SHAY
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                           /s/
                                       _____
                                       RAHUL R.A. HARI
                                       NEIL P. THAKOR
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

DESCRIPTION                                                          PAGE

I.    INTRODUCTION....................................................1

II.   STATEMENT OF FACTS.............................................3

      A.   Defendant's Assault on Officer Robles....................3

      B.   Officer Hisle Inappropriately Spoke to Defendant After
           the Court's Pretrial Conference..........................4

      C.   Officer Hisle Disclosed the Conversation to the
           Government During Routine Witness Prep Shortly after
           the Encounter, and the Government Disclosed the
           Conversation to Defense..................................6

      D.   The Government Investigated the Incident and Continued
           to Meet and Confer with Defense..........................7

III.  ARGUMENT......................................................8

      A.   The Government Did Not Violate Defendant's Due
           Process..................................................9

           1.   Dismissal Is Not Appropriate under the Fifth
                Amendment...........................................9

           2.   The Remedy for a Sixth Amendment Violation is
                Suppression, Not Dismissal.........................14

      B.   There Is No Basis to Dismiss Under the Court's
           Supervisory Powers......................................16

           1.   The Government Did Not Engage in Flagrant
                Misconduct.........................................16

           2.   Defendant Was Not Substantially Prejudiced.........18

           3.   Lesser Remedies Are Available......................19

IV.   CONCLUSION...................................................20

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

Cases:

Soo Park v. Thompson,
  851 F.3d 910 (9th Cir. 2017)................................. 12, 13
Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund,
  332 F.3d 1198 (9th Cir. 2003) ................................. 13
United States v. Bagley,
  473 U.S. 667 (1985) .......................................... 18
United States v. Barrera-Moreno,
  951 F.2d 1089 (9th Cir. 1991) .............................. 9, 10
United States v. Bundy,
  968 F.2d 1019 (9th Cir. 2020) ......................... 9, 16, 19
United States v. Chapman,
  524 F.3d 1073 (9th Cir. 2008) .............................. 8, 17
United States v. Cowser,
  No. 20-30131, 2021 WL 5493411 (9th Cir. Nov. 23, 2021) .......... 11
United States v. Davis,
  974 F.2d 182 (D.C. Cir. 1992) .............................. 11, 12
United States v. Fernandez,
  500 F. Supp. 2d, 661 (W.D. Tex. 2006) ....................... 15
United States v. Garza-Juarez,
  992 F.2d 896 (9th Cir. 1993) ............................... 9, 13
United States v. Green,
  962 F.2d 938 (9th Cir. 1992) ............................... 9, 10
United States v. Gurolla,
  333 F.3d 944 (9th Cir. 2003) ................................. 9
United States v. Kearns,
  5 F.3d 1251 (9th Cir. 1993) ............................... 16, 17
United States v. King,
  200 F.3d 1207 (9th Cir. 1999) ............................... 16
United States v. Marshank,
  777 F. Supp. 1507 (N.D. Cal. 1991) ....................... 14, 15
United States v. Morrison,
  449 U.S. 361 (1981) ......................................... 16
United States v. Rogers,
  751 F.2d 1074 (9th Cir. 1985) ............................... 8
United States v. Ross,
  372 F.3d 1097 (9th Cir. 2004) ............................... 18
United States v. SDI Future Health, Inc.,
  464 F. Supp. 2d 1027 (D. Nev. 2006) ......................... 14
United States v. Simpson,
  2010 WL 1611483 (D. Ariz. 2010) ............................. 9
United States v. Smith,
  924 F.2d 889 (9th Cir. 1991) ........................... 2, 5, 9
United States v. Teague,
  737 F.2d 378 (4th Cir. 1984) ................................ 11

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                                                PAGE

United States v. Tucker,
  8 F.3d 673 (9th Cir. 1993) ........................................ 16

Williams v. Woodford,
  384 F.3d 567 (9th Cir. 2004) ........................... 10, 11, 13

Statutes:

42 U.S.C. § 1983................................................. 12

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Next Tuesday, defendant Maksim Zaitsev will proceed to trial for biting a federal officer, Ivan Robles, with such force that defendant fractured Officer Robles's bone and may result in long-term nerve damage.  Defendant's motion does not involve the victim in this case, Officer Robles, or any of the facts related to defendant's attack on Officer Robles while Officer Robles was just doing his job.  Rather, defendant's motion relates to a different officer, Farris Hisle, who witnessed defendant's assault on Officer Robles.  A few days ago, on May 14, Officer Hisle recognized defendant while both men were in intake following a court hearing, and inappropriately asked defendant twice if defendant recognized Officer Hisle.

The government agrees with the defense that Officer Hisle fell short of the conduct expected of a federal officer by speaking with defendant because Officer Hisle knew of defendant's pending criminal case.  Defendant's characterizations of the facts, however, including that the victim and Officer Hisle "severely beat" defendant on February 25 "because they did not want him to communicate with his wife," or that any AUSA was "told not to disclose" the incident to the defense, are incorrect.

Likewise, defendant's claims that his interaction with Officer Hisle constituted a constitutional violation are unmoored from the law and the cases he cites in his own motion.  The interaction, while inappropriate, did not violate defendant's due process, Fifth Amendment, or Sixth Amendment rights.  Although defendant characterizes Officer Hisle's question about recognition to defendant as a "threat," by defendant's own description of the incident,

1   Officer Hisle did not verbalize a threat or discuss the pending

2   criminal proceedings.  The interaction was devoid of any actual

3   substantive conversation and is not "so grossly shocking and so

4   outrageous as to violate the universal sense of justice," -- as the

5   defense now claims.  United States v. Smith, 924 F.2d 889, 897 (9th

6   Cir. 1991).  For example, even under defendant's version of what

7   happened, Officer Hisle did not say or ask questions remotely related

8   to defendant's choice to testify at trial or representation by

9   counsel, which would implicate the Fifth and Sixth Amendment rights.

10  Defendant's constitutional claims should be rejected.

11       The government nonetheless recognizes the impropriety of Officer

12  Hisle's interaction with defendant (however brief and insubstantial),

13  and, as part of the meet and confer process, offered to make

14  concessions for trial, including (1) agreeing to withdraw Officer

15  Hisle from its witness list, (2) making Officer Hisle available to

16  the defense at trial and agreeing not to object to questions relating

17  to Officer Hisle's interaction with defendant, and (3) withdrawing

18  its pending motion to preclude testimony regarding Officer Hisle's

19  previous misconduct allegations and findings (Dkt. 65.).  Officer

20  Hisle may also be subject to other consequences for his conduct,

21  either administratively as part of an internal review of his action,

22  or civilly.  Thus, although Officer Hisle's interaction with

23  defendant does not rise to the level of a constitutional violation,

24  the government's proposed concessions are a sufficient remedy in the

25  instant case.  Officer Hisle's conduct is not a reason for defendant

26  to receive a free pass for his own criminal behavior.

27       The motion should be denied.

28

2

## II.   STATEMENT OF FACTS

### A.   Defendant's Assault on Officer Robles

In February 2025, inside the Federal Building, defendant violently resisted and bit Officer Robles, who was trying to arrest defendant pursuant to a lawful administrative warrant.  According to Officer Robles, after patting defendant down, defendant stated, "no arrest, lawyer lawyer" and resisted being cuffed.  Once the officers were able to successfully place handcuffs on defendant, both Officer Robles and Officer Hisle walked him past the waiting room in which defendant's wife was being held.  At that point, defendant started to resist again in several ways, including by becoming dead weight in Officer Robles's arms, trying to turn toward the room where his wife was being held, and attempting to fall to the floor.

To hold defendant up and prevent him from turning around, Officer Robles, the victim in this case, placed his hand on defendant's face to redirect defendant's head to the front direction where the officers were trying to lead defendant away from the public.  Defendant then violently bit down on the victim's pinky finger, breaking skin, drawing blood, and eventually fracturing it.

The first sentence of defendant's motion attempts to erase all of these facts and starts <u>after</u> the gruesome assault for which defendant is standing trial: "[t]wo months ago, ICE Officers Farris Hisle and Ivan Robles severely beat a handcuffed Maksim Zaitsev inside an ICE office because they did not want him to communicate with his wife."  (Dkt. 91.)  This is wrong.  Officers Hisle and Robles conducted controlled strikes against defendant only <u>after</u> defendant bit down on Officer Robles's finger so hard that defendant broke Officer Robles's bone and may result in long-term nerve damage.

3

1    This is also irrelevant.  Defendant's instant motion does not
2    address the charged conduct, but relates only to recent behavior by
3    Officer Hisle after the pretrial conference in this case.

4    **B.   Officer Hisle Inappropriately Spoke to Defendant After the**
5    **Court's Pretrial Conference**

6    On Wednesday, May 14, 2025, defendant was transferred from the
7    custody of Federal Protective Services ("FPS") to the custody of
8    Immigration and Customs and Enforcement ("ICE") after the Court's
9    Pretrial Status Conference in this matter.  (Dkt. 91-4, Hisle
10   Interview Report.)  FPS Special Agent Thomas J. Smith brought
11   defendant to the entrance of the ICE field office in the Federal
12   Building located at 300 North Los Angeles Street so the defendant
13   could be processed and returned to the ICE detention center in
14   Adelanto.  (Id.)

15   Officer Hisle was also at the ICE field office because he was
16   escorting and processing a detainee from an unrelated matter.  (Dkt.
17   91-10, Detainee Interaction Report.)  At 10:35 a.m., Special Agent
18   Smith arrived at the entrance to the ICE field office with defendant
19   and another FPS officer.  (Id.)  Agent Smith and his partner were
20   unable to enter the secured detention facility because both agents
21   were armed, so Officer Hisle agreed to escort defendant into the
22   facility.  (Id.)  According to Officer Hisle's report, he did not
23   immediately recognize defendant at the time he agreed to escort Agent
24   Smith's detainee into the building.  (Id.)

25   The government obtained video footage of the incident, which
26   showed Special Agent Smith and Officer Hisle at the door, and Officer
27   Hisle escorting defendant into the facility.  (Dkt. 91-1, Declaration
28   of Shannon Coit "Coit Decl.", at Ex D, G.)

4

The video footage showed Officer Hisle escorting defendant
approximately 20 feet inside the processing center where the other
officers were standing.  Other ICE officers then had defendant face
the wall after which defendant is uncuffed and his hands are placed
against the wall.

At that time, Officer Hisle approached and spoke to defendant.
Officer Hisle asked defendant if defendant remembered him.  (Id.)
Officer Hisle realized his face was partially covered by a face mask,
so he pulled down his mask and asked defendant again if defendant
remembered Officer Hisle.  (Id.)  Defendant then acknowledged Officer
Hisle.  (Id.)  Even under defendant's description of this
interaction, Officer Hisle did not raise his voice or make any verbal
threats to defendant during this interaction.  (Id.; Mot. at 3.)

The video confirmed that the portion of the interaction where
Officer Hisle was next to the defendant speaking to him lasted
approximately thirty seconds.  During that time, Officer Hisle did
not have his hands on the defendant in any way, as video of this
interaction reflects.  (Dkt. 91-4, Surveillance Video, 9:36:55-
9:37:25.)[1]  At 10:37 a.m., Officer Hisle stepped away from defendant.
Other than from 10:36 a.m. to 10:38 a.m., Officer Hisle and defendant
were never in the same room.

Defendant was processed and placed in the main holding cell at
the processing center.  At 11:26 a.m., defendant left the Federal
Building in the custody of ICE.  (Id. at 10:26:00.)

---

[1] The surveillance video of the incident includes a timestamp
that is one hour behind.

**C.   Officer Hisle Disclosed the Conversation to the Government During Routine Witness Prep Shortly after the Encounter, and the Government Disclosed the Conversation to Defense**

That same day, Officer Hisle was scheduled for a witness preparation meeting that Special Agent Smith attended. (Declaration of Rahul R.A. Hari ("Hari Decl."), ¶ 4.) At that meeting, without prompting, Officer Hisle disclosed the interaction he had with defendant. (Id.) The prosecutors immediately informed Special Agent Smith and Officer Hisle that the interaction would be disclosed to defense counsel. (Id. at ¶ 5.) They instructed Special Agent Smith to create a report of the incident so they could disclose it to the defense. (Id.)

After the meeting with Officer Hisle ended, the prosecutors conferred with their supervisors, and every prosecutor agreed that the incident should be disclosed to the defense.[2] (Hari Decl., ¶ 6.) The next day, May 15, 2025, while waiting for the report, defense counsel emailed the trial prosecutors asking them to confirm that the incident between Officer Hisle and defendant had occurred. (Id. at

---

[2] In his motion, defendant claims that government counsel "were . . . told not to inform defense counsel right away" and "were told to delay disclosure." (Mot. at 5, 12.) Defendant also implies that the decision to disclose occurred only upon "prompting" by defense counsel's email. (Id. at 12.) That is false, and unsupported by defense counsel's own declaration regarding the government's communications about its decision to disclose process. (Coit Decl., ¶ 6 ["Based on the discussions with their supervisors, government counsel then waited to inform defense counsel about the threat until Agent Smith created a report memorializing the conversation."].)

The government did not delay disclosure and no one at the U.S. Attorney's Office "told" anyone "not to inform defense counsel" or "to delay disclosure" of the incident. As defendant concedes, the government produced a formal report of the incident within just a single day of learning about the incident. Further, although defense counsel's declaration uses the word "threat," at no point did government counsel tell the defense that Officer Hisle's 30-second, non-substantive conversation was a "threat."

¶ 7.)  Less than 30 minutes later, the trial prosecutors emailed back to confirm that the incident had taken place, and further informed defense counsel that Special Agent Smith was in the process of creating a report regarding the incident.  (Id.)  At 2:08 p.m., Special Agent Smith sent his report to the prosecutors.  (Id. at ¶ 8.)  Within the hour, the government produced the report to the defense.  (Id.)

**D.    The Government Investigated the Incident and Continued to Meet and Confer with Defense**

On May 15, 2025, the prosecutors conferred with supervisors at ICE to (1) investigate how it came to be that Officer Hisle had the interaction with defendant in the first place, and (2) ensure that it would not happen again with Officer Hisle, or any ICE officer.  (Hari Decl., ¶ 9.)  ICE supervisory staff explained that they were unaware of the incident but confirmed they would initiate an internal investigation into whether Officer Hisle's conduct violated ICE's internal policies or practices and would discipline Officer Hisle if so.  (Id.)  That evening, the government updated defense counsel via email reiterating that they did not direct Officer Hisle to speak with defendant and that they were unaware Officer Hisle would be present when defendant returned to the ICE facility.  (Hari Decl., ¶ 9; Def. Ex. H.)  The government also advised that it had taken steps to ensure such an incident would not happen in the future, and that ICE had initiated a disciplinary investigation.  (Hari Decl., ¶ 9; Def. Ex. H.)

The next morning, the parties met and conferred multiple times, both in person at a pre-arranged site visit and via telephone conversations, including with a supervisor from the U.S. Attorney's

Office.  (Hari Decl., ¶ 10.)  Defense counsel indicated that it intended to move to dismiss the indictment and requested a copy of video from the incident, which the government then obtained and provided.  (Id.)  The government also received and produced Officer Hisle's report detailing his account of the interaction with the defendant that same afternoon.  (Id.)  Further, during the meet and confer process, the government agreed that it would not call Officer Hisle to testify, but if defendant called him, the government would not oppose a defense examination on the officer's choice to interact with defendant and the nature of that interaction.  (Id. ¶ 10.)

## III. ARGUMENT

The government acknowledges that Officer Hisle's conduct fell short of appropriate behavior expected from a law enforcement officer and a government witnesses.  As such, the government agreed that it would not call Officer Hisle to testify, but if defendant called him, the government would not oppose a defense examination on the officer's choice to interact with defendant and the nature of that interaction.  But the question before the Court now is whether the government's conduct merits the extraordinary remedy of dismissing the indictment.  The answer is no.

The "drastic step" of "dismissing an indictment is a disfavored remedy," United States v. Rogers, 751 F.2d 1074, 1076 (9th Cir. 1985), and implicates separation-of-powers principles, United States v. Chapman, 524 F.3d 1073, 1085 (9th Cir. 2008) (explaining that improper dismissal of indictment with prejudice "encroaches on the prosecutor's charging authority").  A district court may dismiss an indictment for government misconduct for one of two reasons: (1) a finding of serious due-process violations or (2) a finding that

1  dismissal is warranted under its supervisory powers.  <u>United States</u>

2  <u>v. Bundy</u>, 968 F.2d 1019, 1030 (9th Cir. 2020).  Both grounds have

3  their own exacting standard, neither of which are met here.

4       **A.    The Government Did Not Violate Defendant's Due Process.**

5       Dismissal on due process grounds requires a showing that the

6  government's conduct is "so grossly shocking and so outrageous as to

7  violate the universal sense of justice."  <u>United States v. Smith</u>, 924

8  F.2d 889, 897 (9th Cir. 1991).  The challenged conduct must

9  contravene "fundamental fairness."  <u>United States v. Gurolla</u>, 333

10  F.3d 944, 950 (9th Cir. 2003).  Only the most "flagrant, scandalous,

11  intolerable and offensive" conduct will meet that "extremely high"

12  standard.  <u>United States v. Garza-Juarez</u>, 992 F.2d 896, 904 (9th Cir.

13  1993).  Due process dismissal is usually raised "in situations where

14  law enforcement conduct involves extreme physical or mental brutality

15  or where the crime is 'manufactured by the government from whole

16  cloth.'"  <u>United States v. Green</u>, 962 F.2d 938, 942 (9th Cir. 1992)

17  (citations omitted).  In sum, "successful assertion of the defense is

18  extremely rare."  <u>United States v. Simpson</u>, 2010 WL 1611483, at *6

19  (D. Ariz. 2010).

20       Defendant alleges that the government's conduct merits dismissal

21  on Fifth and Sixth Amendment grounds -- both of which are meritless.

22            1.   <u>Dismissal Is Not Appropriate under the Fifth</u>

23                 <u>Amendment.</u>

24       Officer Hisle's conduct, while inappropriate, did not rise to

25  the level of a violation of the defendant's Fifth Amendment rights.

26       As stated above, to violate due process, governmental conduct

27  must be "so grossly shocking and so outrageous as to violate the

28  universal sense of justice."  <u>United States v. Barrera-Moreno</u>, 951

                                        9

1   F.2d 1089, 1092 (9th Cir. 1991).  Moreover, due process is not

2   violated unless the conduct is attributable to and directed by the

3   government.  Id.  Fifth Amendment violations occur when the

4   government's conduct "involves extreme physical or mental brutality."

5   Green, 962 F.3d at 942.  The "prosecution's conduct must amount to a

6   substantial interference with the defense witness's free and

7   unhampered determination to testify before the conduct violates the

8   defendant's right to due process."  Williams v. Woodford, 384 F.3d

9   567, 602 (9th Cir. 2004) (requiring the defendant to show that "the

10  prosecution intentionally caused a defense witness to invoke the

11  Fifth Amendment right" when refusing to grant use immunity to that

12  witness (emphasis added)).

13       Here, no Fifth Amendment violation occurred.  Officer Hisle's

14  interaction with defendant did not "substantially interfere with the

15  defense witness's free and unhampered determination to testify."

16  Williams, 384 F.3d at 602.  By all accounts -- including defendant's

17  account -- Officer Hisle did not verbally threaten defendant, discuss

18  defendant testifying at trial, or discuss the criminal proceedings.

19  And by all accounts, in a 30-second conversation, Officer Hisle only

20  asked if defendant remembered him.  While inappropriate because

21  defendant is a represented party and there should be no

22  communication, this interaction was not "so grossly shocking and so

23  outrageous as to violate the universal sense of justice."  Barrera-

24  Moreno, 951 F.2d at 1092.

25       And while defense counsel claims defendant felt threatened by

26  the interaction with Officer Hisle, defendant's subjective

27  perceptions of the interaction alone are insufficient to raise a

28

Fifth Amendment claim.[3]  See United States v. Teague, 737 F.2d 378, 384 (4th Cir. 1984) (finding no due process violation despite "dangerous and foolish" call from AUSA warning witness he "would be hearing from the United States" if he perjured himself at trial, because defendant ultimately "was not deprived of his witness' testimony"); (cf. Mot. at 8 (citing only cases where witnesses did not actually testify at trial).)  Indeed, in Williams, the Ninth Circuit noted that even if the government's indictment of a defense witness caused that witness to invoke his Fifth Amendment rights, such action did not "taint[]" the defense witness's "decision not to testify at the second state hearing" because the original charges were not brought with the purpose "to harass him and discourage him from testifying at the hearing." Williams, 384 F.3d at 602 (denying constitutional claim when defendant failed to show that government denied defense witnesses use immunity "with the deliberate intention of distorting the fact-finding process" (emphasis added)); see also United States v. Davis, 974 F.2d 182, 187 (D.C. Cir. 1992) (a defendant's constitutional rights "are not trenched upon by mere information or advice about the possibility of a perjury prosecution, but by deliberate and badgering threats designed to quash significant testimony") (emphasis added); United States v. Cowser, No. 20-30131, 2021 WL 5493411, at *3 (9th Cir. Nov. 23, 2021) (holding that the government does not substantially interfere with a defense witness's testimony "every time a prosecutor or trial court offers advice

---

[3] Defendant alleges that another ICE officer told Officer Hisle, "man, relax," and that Officer Hisle said more to defendant that he could not understand.  (Dkt. 91-1, ¶¶ 5, 8).  Based on defense counsel's declaration, however, defendant's interpretation of the 30-second conversation appears to be evolving.  (Id. ¶¶ 5, 8, 10.)

1  regarding the penalties of perjury.") (citing <u>Davis</u>, 974 F.2d at

2  187).

3        So too here.  While Officer Hisle's encounter with defendant was

4  improper, there is no evidence it was made with the deliberate

5  intention or purpose of harassment or intimidation. Indeed, Officer

6  Hisle spoke to defendant for roughly 30 seconds and is not alleged to

7  have mentioned anything relating to defendant's potential testimony

8  or case, and disclosed this interaction to the prosecutors after it

9  happened.  Likewise, the prosecutors did not direct the officer to

10 interact with defendant and only learned of the interaction after it

11 had happened.  Further, the government has taken remedial steps to

12 ensure that Officer Hisle will not further interact with defendant,

13 including having Special Agent Smith remind all witnesses not to

14 interact with defendant in any way, speaking with Officer Hisle's

15 supervisors who initiated a disciplinary investigation, and informing

16 ICE Office of the Principal Legal Advisor about the incident and

17 requesting that involved ICE personnel not be assigned to process

18 defendant going forward, and that no one from ICE -- whether involved

19 in the case or not -- have substantive communications with a

20 represented party.

21       Defendant's reliance on <u>Soo Park v. Thompson</u>, a civil case

22 brought under 42 U.S.C. § 1983, is also misplaced.  851 F.3d 910 (9th

23 Cir. 2017).  There, the Ninth Circuit found that the plaintiff had

24 alleged sufficient facts in his complaint to "infer [a detective]

25 intended to intimidate [a witness]," thus meeting the minimum

26 standard to allege a civil claim.  <u>Id.</u> at 920.  As a threshold

27 matter, the civil standard on a motion to dismiss is a far lower bar

28 than the criminal standard for dismissing an indictment.  <u>Compare</u>

1  <u>Shaver v. Operating Eng'rs Loc. 428 Pension Tr. Fund</u>, 332 F.3d 1198,

2  1203 (9th Cir. 2003) (standard to survive civil motion to dismiss is

3  a "low standard"), <u>with</u> <u>Garza-Juarez</u>, 992 F.2d at 904 (standard to

4  dismiss indictment is "extremely high"). But, in any event, the facts

5  in <u>Thompson</u> actually support the government's position.  In <u>Thompson</u>,

6  the detective actively sought to dissuade a material witness from

7  offering exculpatory testimony at a murder trial.  <u>Id.</u> at 916.  The

8  detective called a witness who was expected to testify that a

9  different culprit, not defendant, had admitted to committing the

10 subject murder.  <u>Id.</u>  The detective, knowing the witness intended to

11 testify and the content of the anticipated testimony, lied to the

12 witness about the evidence and made multiple statements that the

13 defense investigators were duplicitous.  <u>Id.</u>  Based on those facts,

14 the Ninth Circuit found that the detective demonstrative a

15 "deliberative intent" to prevent the witness from testifying on

16 behalf of the defense.  <u>Id.</u>  Here, Officer Hisle's 30-second

17 conversation with defendant, while unacceptable, is not remotely the

18 same.  Even under defendant's portrayal of the encounter, during the

19 30-second conversation, Officer Hisle did not discuss defendant's

20 plans to testify at trial, much less say anything about the ongoing

21 criminal proceedings.  In short, there is no basis to argue that

22 Officer Hisle's 30-second, insubstantial conversation comes close to

23 demonstrating a "deliberative intent" to "substantially interfere"

24 with defendant's exercise of his right to testify at trial.  <u>Id.</u> at

25 916; <u>Williams</u>, 384 F.3d at 602.

26

27

28

13

1          2.    The Remedy for a Sixth Amendment Violation is

2                Suppression, Not Dismissal.

3        Where the government is alleged to have intruded on a

4   defendant's right to counsel under the Sixth Amendment, the remedy is

5   typically suppression of evidence, not dismissal.  United States v.

6   Marshank, 777 F. Supp. 1507, 1525 (N.D. Cal. 1991).  Here, the

7   challenged conduct does not rise to a Sixth Amendment violation and

8   did not generate inculpatory evidence to be suppressed.

9        In cases where the government is alleged to intrude on the

10  defendant's right to counsel after it has attached, a Sixth Amendment

11  violation has not occurred unless "privileged information is

12  introduced at trial, the prosecution obtains the defense plans and

13  strategy, or the governmental intrusion destroys the defendant's

14  confidence in his attorney."  United States v. SDI Future Health,

15  Inc., 464 F. Supp. 2d 1027, 1048 (D. Nev. 2006); Marshank, 777 F.

16  Supp. at 1525 ("A defendant's Sixth Amendment rights are violated

17  only when the government intrusion results in prejudice to the

18  defendant.").

19       Defendant cites primarily to Marshank on his Sixth Amendment

20  violation claim, a case in which the court dismissed an indictment

21  after a finding that the defendant's Sixth Amendment rights had been

22  violated.  (Mot. at 8-10.)  There, the defendants were charged as

23  members of a scheme to import marijuana and hashish into the United

24  States.  Marshank, 777 F. Supp. at 1511.  As part of its pre-

25  indictment investigation into the matter, government representatives

26  worked directly with a criminal defense attorney to identify prior

27  clients who might serve as informants in the criminal enterprise that

28  was being investigated.  Id. at 1513.  The attorney and the

                                    14

1    prosecution team settled on the charged defendant as the best

2    candidate to be indicted and induced to turn into a cooperator.  Id.

3    Unbeknownst to the defendant, his attorney passed information to the

4    investigators that led directly to his arrest.  Id.  The same

5    attorney then worked out a plea agreement between the government and

6    his client, without ever communicating to his client his own role in

7    the man's arrest.  Id. at 1513-14.  In dismissing the indictment, the

8    Court ruled that typically right-to-counsel violations are cured by

9    suppressing the fruits of the transgression, usually inculpatory

10   evidence.  Id. at 1521.  But in the case before it, the Marshank

11   court said the fruit of the transgression was the indictment itself.

12   Id. at 1522.  Marshank cuts against dismissal here.  The contact

13   between Officer Hisle and defendant did not lead to a disclosure of

14   any material, let alone privileged material or defense strategy.  Nor

15   is defendant alleging it degraded his relationship with counsel to

16   amount to deprivation of representation.  As such, no Sixth Amendment

17   violation occurred.

18        Even if the Court finds there was a Sixth Amendment violation,

19   the appropriate remedy would be to exclude the fruits of the

20   transgression.  There are none here.  Defendant has made no

21   allegation that the government obtained incriminating evidence

22   against defendant because of the interaction between Officer Hisle

23   and him.  See, e.g., United States v. Fernandez, 500 F. Supp. 2d,

24   661, 666 (W.D. Tex. 2006) ("If no evidence was obtained from

25   defendant, there cannot exist even a threat of prejudice from alleged

26   Sixth Amendment violations; 'absent demonstrable prejudice, or

27   substantial threat thereof, dismissal of the indictment is plainly

28   inappropriate, even though the violation [of the Sixth Amendment

15

1  right to counsel] may have been deliberate.') (citing United States
2  v. Morrison, 449 U.S. 361, 366 (1981)).

3      **B.    There Is No Basis to Dismiss Under the Court's Supervisory**
4          **Powers.**

5      "If the government's investigatory or prosecutorial conduct is
6  reprehensible, but not quite a violation of due process, the district
7  court may nonetheless dismiss an indictment under its supervisory
8  powers." United States v. King, 200 F.3d 1207, 1214 (9th Cir. 1999)
9  However, "these supervisory powers . . . are more often referred to
10  than invoked," id. (cleaned up), and the circumstances under which
11  the Court may exercise its supervisory power are "substantially
12  limited," United States v. Tucker, 8 F.3d 673, 674 (9th Cir. 1993)
13  (en banc). "A district court may dismiss an indictment under its
14  inherent supervisory powers "(1) to implement a remedy for the
15  violation of a recognized statutory or constitutional right; (2) to
16  preserve judicial integrity by ensuring that a conviction rests on
17  appropriate considerations validly before a jury; and (3) to deter
18  future illegal conduct." Bundy, 968 F.3d at 1030 (9th Cir.
19  2020)(cleaned up).  Indeed, the Ninth Circuit has held that "[u]nder
20  its supervisory powers, a district court may dismiss an indictment
21  with prejudice for prosecutorial misconduct only if there is '(1)
22  flagrant misbehavior and (2) substantial prejudice,'" Bundy, 968 F.3d
23  at 1031 (quoting United States v. Kearns, 5 F.3d 1251, 1253 (9th Cir.
24  1993)), and there is "no lesser remedial action" available, id.
25  Defendant fails to establish any of those elements.

26      1.    The Government Did Not Engage in Flagrant Misconduct
27      Negligent or grossly negligent government conduct is not
28  "flagrant"; dismissal is permitted only for intentional misconduct or

16

1  reckless disregard for the prosecutor's constitutional obligations.

2  Chapman, 524 F.3d at 1085; Kearns, 5 F.3d at 1255; United States v.

3  Dominguez, 641 F. App'x 738, 740 (9th Cir. 2016) (affirming finding

4  of no "flagrant" misconduct although government conceded that it was

5  "sloppy, inexcusably tardy, and almost grossly negligent" and had

6  committed numerous Brady, Giglio, Jencks Act and Rule 16 violations).

7      The facts here do not amount to flagrant misconduct.  Officer

8  Hisle's interaction with defendant, though a demonstration of poor

9  judgment, was approximately thirty seconds of conversation.  Officer

10 Hisle did not make any reference to the forthcoming trial or

11 defendant testifying.  Nor did the prosecutors have anything to do

12 with Officer Hisle's decision to speak to defendant.

13     Defendant further argues that the government's conduct was

14 flagrant because it did not inform defense counsel of a threat to

15 defendant's safety.  (Mot. at 12.)  As of May 14, government counsel

16 was only aware that Officer Hisle had spoken to defendant -- a

17 concerning revelation it always intended to disclose -- not an

18 indication that his safety was at all implicated by the interaction.

19 Indeed, defendant was already on his way to the Adelanto ICE

20 Processing Center and away from Officer Hisle at the time government

21 counsel became informed of the incident.  The government at all times

22 intended to disclose the interaction to defense counsel, which it did

23 the very next day in Special Agent Smith's report.  The government

24 took further steps to investigate how the interaction had been

25 allowed to occur, produced Officer Hisle's memorandum on the

26 interaction, and produced all video of the interaction and

27 defendant's custody from May 14, 2025.  Under the standard identified

28 by the Ninth Circuit, the government's conduct here was not flagrant.

1    Defendant also tries to push for dismissal by referencing the

2    intake interview that ICE conducted when defendant was detained

3    administratively after being released on bond in the criminal

4    proceeding -- referring to this process as an "interrogation."

5    Notwithstanding this mischaracterization of what happened, the

6    government did undertake steps to remind ICE that officers conducting

7    administrative interviews at Adelanto should be mindful of when a

8    detainee may have parallel criminal proceedings, which should not be

9    discussed.  The government has no reason to believe -- and defendant

10   has not suggested otherwise -- that the criminal proceedings were

11   discussed in any way during that intake interview.  (Coit Decl. at

12   ¶ 5.)

13            2.   Defendant Was Not Substantially Prejudiced

14   Defendant was not substantially prejudiced by the government's

15   conduct.  Substantial prejudice is established where the government

16   conduct "has at least some impact on the verdict and thus redounded

17   to the defendant's prejudice."  United States v. Ross, 372 F.3d 1097,

18   1111 (9th Cir. 2004); cf. United States v. Bagley, 473 U.S. 667, 682

19   (1985) (a court may find a Brady violation only if "there is a

20   reasonable probability that, had the evidence been disclosed to the

21   defense, the result of the proceeding would have been different.").

22   Officer Hisle's decision to approach and speak to defendant does

23   not meet this standard.  Though defendant states his concerns with

24   testifying, remedial measures short of dismissal can alleviate those

25   concerns and there is no indication that Officer Hisle's interaction

26   with defendant will have any effect on the jury's decision come

27   trial.

28

18

Nor was defendant prejudiced by the timing of the government's disclosure.  Despite defendant's claims to the contrary, there was never any threat to defendant's safety.  The interaction between defendant and Officer Hisle had concluded by the time government counsel was informed of the incident during a pre-scheduled witness preparation meeting with Officer Hisle, not a meeting to discuss the interaction, as counsel states.  As stated above, Officer Hisle remained at his office at the 300 N. Federal Building in downtown Los Angeles and defendant was on his way back to the Adelanto ICE Processing Center where he is in custody, approximately 85 miles away.  The incident was disclosed the day after it occurred, and the government immediately took corrective actions to ensure that it would not happen again.

Defense counsel does not articulate what they would have done differently had they known about the incident on Wednesday, May 14, instead of on Thursday, May 15.  Within three days of the disclosure, defendant's motion was on file.  Nor will there be a substantial impact on the verdict.  The government has agreed to certain remedial measures in connection with the 30-second conversation between Officer Hisle and defendant; it has produced the relevant discovery regarding the incident (reports, video).  Defendant has not identified any other measures it would have taken had it known about the incident sooner and has not requested a continuance of the trial date or suggested that it would need more time to incorporate this evidence into its case.

> 3.   Lesser Remedies Are Available

Defendant has also failed to show that there is no lesser available remedy than dismissal.  Bundy, 968 F.3d at 1031, 1037.

The government has proposed three remedies that are commensurate with Officer Hisle's conduct and sufficient to address any prejudice to defendant because of that conduct, of which it already notified the defense.  First, the government agreed not to call Officer Hisle as a witness in the upcoming trial.  Second, the government agreed to make Officer Hisle available to the defense as a witness and agreed not to object to an examination of Officer Hisle on his interaction with defendant.  Third, the government agreed to withdraw the portion of its pending motion to preclude (Dkt. 65) as it relates to Officer Hisle's previous misconduct allegations and findings.  Separate and apart, there is a pending disciplinary investigation, which is the better forum to investigate what actually happened between Officer Hisle and defendant.

Given the availability of remedial options that address the specific harm experienced by defendant, dismissal is not warranted.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court deny defendant's motion to dismiss the indictment.

        The undersigned, counsel of record for the United States of America, certifies that this brief contains 5333 words, which complies with the word limit of L.R. 11-6.1.


Dated: May 17, 2025                Respectfully submitted,

                                   BILAL A. ESSAYLI
                                   United States Attorney

                                   CHRISTINA T. SHAY
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                        /s/
                                   _____
                                   RAHUL R.A. HARI
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA